**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

_____

| | |
|---|---|
| RACHEL CULLINANE, )<br>JACQUELINE NUNEZ, )<br>ELIZABETH SCHAUL, and )<br>ROSS McDONAGH )<br>individually and on behalf of all )<br>others similarly situated, )<br>)<br>Plaintiffs, )<br>v. )<br>)<br>UBER TECHNOLOGIES, INC., )<br>)<br>Defendant. )<br>_____) | C.A. No. 14-14750-DPW |

_____)

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY OR, IN THE ALTERNATIVE, DISMISS PROCEEDINGS

S. Elaine McChesney (BBO # 329090)
elaine.mcchesney@morganlewis.com
Lawrence T. Stanley, Jr. (BBO # 657381)
lawrence.stanley@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA  02110
(617) 951-8000

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................... 1

II.   PLAINTIFFS' CONTRACTS WITH UBER. ..................................................... 2

    A.     Plaintiffs And Uber Entered Contracts Upon Plaintiffs' Acceptance Of Uber's Terms & Conditions. ................................................................... 2

    B.     By Agreeing To Uber's Terms & Conditions, Plaintiffs Accepted The Arbitration Agreement Contained Therein. ........................................... 5

    C.     Plaintiffs' Allegations Prove the Existence of Their Contracts. ........... 6

III.  LEGAL ARGUMENT ........................................................................................ 7

    A.     The Court Must Compel Arbitration Upon a *Prima Facie* Showing That An Applicable Arbitration Agreement Exists. ...................................... 7

    B.     There Is No Dispute That The Parties' Contracts Contained An Arbitration Clause. ............................................................................. 9

    C.     The Parties Delegated Questions Of Arbitrability To The Arbitrator. ............... 11

    D.     The Court Should Enforce The Arbitration Agreement. ..................... 12

          1.     The Arbitration Agreement Is Valid And Enforceable. .......................... 12

          2.     Hybrid Clickwrap Agreements Like The One At Issue Are Routinely Enforced. ................................................................ 14

          3.     Plaintiffs Cannot Avoid Their Agreement To Arbitrate Where They Seek To Enforce The Contract Containing The Arbitration Agreement. ........................................................ 17

          4.     Plaintiffs' Claims Are Covered By The Arbitration Clause. ................... 17

          5.     The Arbitration Agreement Is Not Unconscionable. .............................. 18

IV.  CONCLUSION ................................................................................................. 20

DB2/25898864.2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*5381 Partners LLC v. Shareasale.com, Inc.*,
  No. 12-4263 (JFB) (AKT), 2013 U.S. Dist. LEXIS 136003 (E.D.N.Y. Sept.
  23, 2013) ..................................................................................................................14

*Ajemian v. Yahoo!, Inc.*,
  83 Mass. App. Ct. 565 (2013) ...........................................................................9, 10, 13, 14

*Apollo Computer, Inc. v. Berg*,
  886 F.2d 469 (1st Cir. 1989) ..........................................................................................12

*AT&T Mobility, LLC v. Concepcion*,
  -- U.S. --, 131 S. Ct. 1740 (2011) ...............................................................................1, 20

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986) .......................................................................................................17

*Awuah v. Coverall N. Am., Inc.*,
  554 F.3d 7 (1st Cir. 2009) ..............................................................................................12

*Awuah v. Coverall N. Am., Inc.*,
  703 F.3d 36 (1st Cir. 2012) .......................................................................................10, 13

*Buckeye Check Cashing, Inc. v. Cardegna*,
  546 U.S. 440 (2006) .........................................................................................................8

*Bulldog Investors Gen. Partnership v. Sec'y of the Commonwealth*,
  457 Mass. 210 (2010) .....................................................................................................13

*Carnival Cruise Lines, Inc. v. Shute*,
  499 U.S. 585 (1991) .......................................................................................................15

*Center Corp. v. Remote Solution Co.*,
  398 F.3d 205 (2d Cir. 2005) ...........................................................................................11

*Combined Energies v. CCI, Inc.*,
  514 F.3d 168 (1st Cir. 2008) ............................................................................................8

*Crawford v. Beachbody, LLC*,
  No. 14-1583, 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ...........................................14

*De Nicola v. Cunard Line, Ltd.*,
  642 F.2d 5 (1st Cir. 1981) ..............................................................................................13

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985) .................................................................................................8

*DeLuca v. Bear Stearns & Co.*,
    175 F. Supp. 2d 102 (D. Mass. 2001) ...................................................................20

*E.H. Ashley & Co. v. Wells Fargo Alarm Services*,
    907 F.2d 1274 (1st Cir. 1990) ..............................................................................19

*Effron v. Sun Line Cruises, Inc.*,
    67 F.3d 7 (2d Cir. 1995) .......................................................................................15

*Ellerbee v. GameStop, Inc.*,
    604 F. Supp. 2d 349 (D. Mass. 2009) ..................................................................19

*Fantastic Sam's Franchise Corp. v. FRO Ass'n Ltd.*,
    683 F.3d 18 (1st Cir. 2010) ..................................................................................11

*Farrell v. Chandler, Gardner & Williams, Inc.*,
    252 Mass. 341 (1925) ..........................................................................................10

*Fasson v. Palace (Waterland)*,
    78 F.3d 1448 (9th Cir. 1996) ................................................................................13

*Fecteau Benefits Grp., Inc. v. Knox*,
    72 Mass. App. Ct. 204 (2008) ..............................................................................13

*Feeney v. Dell Inc.*,
    465 Mass. 470 (2013) ..........................................................................................20

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012) ............................................................15, 16

*Garcia v. Enter. Holdings, Inc.*,
    Case No. 14-00596, 2015 U.S. Dist. LEXIS 8799 (N.D. Cal. Jan. 23, 2015) .........14

*Grand Wireless, Inc. v. Verizon Wireless, Inc.*,
    748 F.3d 1 (1st Cir. 2014) ..........................................................................8, 12, 18

*Grant-Fletcher v. Collecto, Inc.*,
    No. 13-3505, 2014 WL 1877410 (D. Md. May 9, 2014) .......................................17

*Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    885 F.2d 1149 (3d Cir. 1989) .................................................................................8

*Hines v. Overstock.com, Inc.*,
    380 Fed. Appx. 22 (2d Cir. 2010) ..........................................................................9

DB2/25898864.2

*Hobbs v. Massasoit Whip Co.*,
   158 Mass. 194 (1893) (Holmes, J.)........................................................13

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2002)..................................................................................11

*Hubbert v. Dell Corp.*,
   835 N.E.2d 113 (Ill. App. Ct. 2005) ......................................................15

*iLOR, LLC v. Google, Inc.*,
   631 F.3d 1372 (Fed. Cir. 2011)................................................................3

*Infinity Fluids, Corp. v. General Dynamics Land Systems, Inc.*,
   No. 12-40004-TSH, 2013 U.S. Dist. LEXIS 86042 (D. Mass. Jun. 19, 2013).......................17

*Jacobs v. USA Track & Field*,
   374 F.3d 85 (2d Cir. 2004)........................................................................8

*Joule, Inc. v. Simmons*,
   2011 Mass. Super. LEXIS 292, 29 Mass. .................................................8

*Kirleis v. Dicki, McCarney & Chilcote, P.C.*,
   560 F.3d 156 (3d Cir. 2009)......................................................................9

*Lenfest v. Verizon Enter. Solutions*,
   No. 13-11596-NMG, 2014 U.S. Dist. LEXIS 138305 (D. Mass. Sept. 29,
   2014) ......................................................................................................13

*Leong v. Myspace, Inc.*,
   No. CV 10-8366, 2011 WL 7808208 (C.D. Cal. March 11, 2011) ...........16

*Major v. McCallister*,
   302 S.W.3d 227 (Mo. Ct. App. 2009)......................................................15

*Mattox v. Decision One Mortgage Co., LLC*,
   No. 01-10657-GAO, 2002 WL 31121087 (D. Mass. Sept. 26, 2002) ...................19

*Miller v. Cotter*,
   448 Mass. 671, 863 N.E.2d 537 (Mass. 2007)........................................19

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)....................................................................................18

*Nguyen v. Barnes & Noble, Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ..............................................................8, 16

*Nicosia v. Amazon.com, Inc.*,
   No. 14-4513, 2015 WL 500180 (E.D.N.Y. Feb. 4, 2015) ......................14

-iv-

*Perez v. Main Brigade, Inc.*,
    No. C 07-3473, 2007 WL 2990368 (N.D. Cal. Oct. 11, 2007).................................9

*Petrofac, Inc. v. DynMcDermott Petro. Operations Co.*,
    687 F.3d 671 (5th Cir. 2012) ...............................................................11

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967)..............................................................................12

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393 (2d Cir. 2004)....................................................................9

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010)........................................................................11, 18

*Securities Indus. Assoc. v. Connolly*,
    883 F.2d 1114 (1st Cir. 1989).................................................................13

*Starke v. Gilt Groupe, Inc.*,
    No. 13 Civ. 5497 (LLS), 2014 U.S. Dist. LEXIS 58006 (S.D.N.Y. Apr. 24,
    2014) .................................................................................................10, 14

*Storie v. Household Int'l, Inc.*,
    No. 03-40268-FDS, 2005 WL 3728718 (D. Mass. September 22, 2005) ..............19

*Swift v. Zynga Game Network, Inc.*,
    805 F. Supp. 2d 904 (N.D. Cal. 2011) ..................................................10, 11, 14

*United States v. Faris*,
    583 F.3d 756 (11th Cir. 2009) (per curiam)..............................................8

*United States v. Sutcliffe*,
    505 F.3d 944 (9th Cir. 2007) ...................................................................8

**Statutes**

9 U.S.C. § 1 *et seq.*......................................................................................1

9 U.S.C. § 2.................................................................................................7

9 U.S.C. § 3.................................................................................................8

9 U.S.C. § 4.................................................................................................8

**Other Authorities**

Restatement (Second) of Contracts § 50(1) ................................................13

Uber Technologies, Inc. ("Uber") respectfully submits this memorandum in support of its Motion to Compel Arbitration and Stay or, in the Alternative, to Dismiss these Proceedings pending resolution of arbitration, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA"). Plaintiffs' contracts with Uber contain a mandatory arbitration provision which requires each plaintiff to arbitrate disputes with Uber on an individual (rather than a class) basis. Uber asks this Court to enforce the arbitration provision in the parties' contracts and compel arbitration of each of Plaintiffs' claims.

## I.      INTRODUCTION

The very contract upon which Plaintiffs Rachel Cullinane, Jacqueline Nunez, Elizabeth Schaul, and Ross McDonagh (collectively, "Plaintiffs") base this action requires Plaintiffs to arbitrate their dispute. Plaintiffs admit that they each registered for Uber's services by creating an account using Uber's mobile phone application (the "Uber App"), and then afterwards used Uber's services. Amended Complaint ("AC") ¶¶ 16-19. As part of the registration process, Plaintiffs were expressly and conspicuously informed that "**[b]y creating an Uber account you agree to the Terms & Conditions and Privacy Policy**" and were simultaneously directed to Uber's Terms & Conditions ("Terms & Conditions") via hyperlink. *Id.* at ¶ 23. Those Terms & Conditions include a clear and conspicuous agreement to arbitrate (the "Arbitration Agreement"). Plaintiffs clicked on the icon indicating their agreement to create an account and their acceptance of Uber's Terms & Conditions. Plaintiffs now sue Uber for an alleged breach of those contracts.

Plaintiffs cannot have it both ways. Having agreed to Uber's Terms & Conditions and sued Uber for supposedly violating those Terms & Conditions, binding First Circuit and Massachusetts authority, supported by precedent throughout the country, mandates that the Court grant Uber's motion and compel Plaintiffs to arbitrate their dispute.[1]

---

[1] The Arbitration Agreement includes the requirement that "any dispute, claim or controversy arising out of or relating to" the use of Uber's services – language that undoubtedly encompasses the assertions in this litigation – be resolved either by binding arbitration or in small claims court, and plaintiffs explicitly waived any right to pursue a class action against Uber. *See AT&T*

II.     **PLAINTIFFS' CONTRACTS WITH UBER.**

A.     **Plaintiffs And Uber Entered Contracts Upon Plaintiffs' Acceptance Of Uber's Terms & Conditions.**

Uber is a technology company that connects riders with third-party transportation providers.  Declaration of Paul Holden ("Holden Decl.") ¶ 3.  Using Uber's technology platform, riders request transportation services from their smartphones (such as iPhones) via the Uber App, and these requests are then transmitted to independent transportation providers looking for riders in the area.  *Id.* However, ***before*** riders can request any transportation services via the Uber App, riders must first create an Uber account and accept Uber's Terms & Conditions.  AC at ¶ 27; Holden Decl. ¶ 4.  A rider cannot create an Uber account without affirmative acceptance of Uber's Terms & Conditions.  Holden Decl. ¶ 15.

Uber's registration process is simple and straightforward.  It involves three basic steps, each of which is confined to a single screen on the user's smartphone, with no scrolling required: (1) Create an Account; (2) Create a Profile; and (3) Link Payment.  AC ¶¶ 21-23; Holden Decl. ¶ 11-15 and Exs. A-D.

In the "Create an Account" step/screen, prospective registrants enter their email address, mobile phone number, and a chosen password.  On the same screen, Uber informs registrants that:  "We use your email and mobile number to send you ride confirmations and receipts."  AC ¶ 21.  The prospective registrant must then hit the "Next" button at the top right of the screen to move to the next step.  *Id.*

In the "Create a Profile" step/screen, prospective registrants enter their first and last names (their user profile).  Once again, the prospective registrant must then hit the "Next" button at the top right of the screen to move to the next and final step.  AC ¶ 22.

The final step in the registration process is the "Link Payment" step/screen, where prospective registrants can either scan or enter their credit card information.  Registrants are informed on the same screen that:

---

*Mobility, LLC v. Concepcion*, -- U.S. --, 131 S. Ct. 1740, 1745 (2011) (class action waivers upheld by the United States Supreme Court).

DB2/25898864.2

> By creating an Uber account, you agree to the Terms & Conditions and Privacy Policy.

The words "Terms & Conditions and Privacy Policy" are included in a hyperlink.[2]  AC ¶ 23. Once the registrant clicks that hyperlink, the user is directed to a screen with two links: one to Uber's Terms & Conditions and a second to Uber's Privacy Policy.  Holden Decl. ¶ 15.  The user can view either document by clicking on the appropriate link.  *Id.* As the screenshots in the Amended Complaint illustrate, when Plaintiffs signed up on their iPhones, this language was ***not*** obscured by the iPhone's electronic keyboard, even when the keyboard was in use.  AC ¶ 23; *see also* Holden Decl. ¶ 16 and Exs. A-D.  Upon entering their payment information, users created their Uber account by clicking the "DONE" button.  Holden Decl. ¶ 15.  Prospective users cannot complete the registration process via the Uber App without completing all three screens and clicking the "DONE" button on the final screen.  *Id.*  Clear images of each step of the sign-up process for each Plaintiff are depicted below:



**Exhibits A-1 and C-1**



**Exhibits A-2 and C-2**

---

[2] *See iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1374 (Fed. Cir. 2011) (a hyperlink is a "string of text or a computer graphic that a user can 'click' with the mouse pointer" to open a new browser page).

DB2/25898864.2



**Exhibits A-3 and C-3**

Exs. A and C to Holden Decl. (screen shots of each of the three steps/screens in the registration process of Plaintiffs Nunez and Schaul).





**Exhibits B-1 and D1**          **Exhibits B-2 and D2**

DB2/25898864.2



**Exhibits B-4 and D4**

Exs. B and D to Holden Decl. (screen shots of each of the three steps/screens in the registration process of Plaintiffs Cullinane and McDonagh).

**B.      By Agreeing To Uber's Terms & Conditions, Plaintiffs Accepted The Arbitration Agreement Contained Therein.**

Uber's Terms & Conditions are equally straightforward and easy to understand.  The first section provides that the Terms & Conditions create a contractual relationship between the registrant and Uber.   The section entitled "Dispute Resolution," contains the following arbitration provision:

## DISPUTE RESOLUTION

> You and Company agree that any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof or the use of the Service or Application (collectively, "Disputes")[3] will be settled by

---

[3] The terms "Service" and "Application" are defined in the Terms & Conditions as follows: "By using or receiving any services supplied to you by the Company (collectively, the 'Service'), and downloading, installing or using any associated application supplied by the Company which purpose is to enable you to use the Service (collectively, the 'Application'), **you hereby expressly acknowledge and agree to be bound by the terms and conditions of the**

> binding arbitration, except that each party retains the right to bring an individual action in small claims court and the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents or other intellectual property rights. **You acknowledge and agree that you and Company are each waiving the right to a trial by jury or to participate as a plaintiff or class User in any purported class action or representative proceeding.** . . .
>
> <u>Arbitration Rules and Governing Law</u>. The arbitration will be administered by the American Arbitration Association ("AAA") in accordance with the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (the "AAA Rules") then in effect, except as modified by this "Dispute Resolution" section. . . .   The Federal Arbitration Act will govern the interpretation and enforcement of this Section . . . .

Exs. A and B to R. Michael Cianfrani Declaration ("Cianfrani Decl.") (emphasis in original).

### C.   Plaintiffs' Allegations Prove the Existence of Their Contracts.

Plaintiffs do not dispute that they each created an Uber account that required acceptance of Uber's Terms & Conditions.  Plaintiff Jacqueline Nunez alleges that she downloaded the Uber App onto her iPhone and created her Uber account on or about January 1, 2013.  AC ¶¶ 16, 20. Plaintiff Rachel Cullinane alleges that she downloaded the Uber App onto her iPhone and created an Uber account on or about April 1, 2014.  *Id.*  ¶¶ 17, 20.  Plaintiff Elizabeth Schaul alleges that she downloaded the Uber App onto her iPhone and created an Uber before December 2013.  *Id.*  ¶¶ 18, 20.  Plaintiff Ross McDonagh alleges that he downloaded the Uber App onto his iPhone and created an Uber account on or about January 10, 2014.  *Id.* ¶¶ 19, 20.[4]  Plaintiffs acknowledge that, on the final registration screen, the Uber App displayed to them:

> By creating an Uber account, you agree to the Terms & Conditions and Privacy Policy.

---

**Agreement**, and any future amendments and additions to this Agreement as published from time to time at https://www.uber.com/terms (/web/20140905032202/https://www.uber.com/terms) or through the Service."  (emphasis added).

[4] Uber's business records indicate that Ms. Nunez registered via iPhone on December 31, 2012, Ms. Cullinane registered via iPhone on December 21, 2013, Ms. Schaul registered via iPhone on September 20, 2013, and Mr. McDonagh registered via iPhone on January 10, 2014.  Holden Decl. ¶¶ 1-10.

*Id.* ¶ 23.  This agreement to terms language was not obscured in any way and included a link to the referenced policies. *Id.; see also* Holden Decl. ¶ 16 and Exs. A-D.  Based on Plaintiffs' own allegations, Plaintiffs clicked the acceptance button to create their accounts.  AC ¶¶ 16-19.  That click was the electronic equivalent of affixing their signatures to the contract.  Thus, Plaintiffs' own allegations establish that they agreed to Uber's Terms & Conditions.

Going even further, Plaintiffs affirmatively allege the existence of a valid contract with Uber.  All of Plaintiffs' claims are based on Uber's alleged breach of the parties' contracts.  *See* AC ¶¶ 28-35 (quoting from Uber's Terms & Conditions in alleging which terms Uber allegedly breached); ¶¶ 85-86 (breach of contract); ¶¶ 87-88 (breach of express warranty); ¶¶ 89-90 (negation of contractual warranties); Prayer for Relief B (seeking a declaration that Uber breaches its contract with account users); Civil Cover Sheet, ECF #6-1, at p. 19/33 ("The action involves . . . the interpretation of provisions of Uber's electronic agreements with its customers."); *id.* ("Type of Action – Breach of Contract, Unjust Enrichment, Other").

In short, Plaintiffs cannot show that they did not assent to the Terms & Conditions. Instead, Plaintiffs contend that they should be relieved of their obligation to arbitrate because they chose not to read the contract Terms & Conditions.  Plaintiffs further assert that they should not be bound by the terms of the deal they struck because the Terms & Conditions were allegedly "obscured" during the registration process (despite screen shots Plaintiffs themselves provide that show no such obstruction) and because Uber's Terms & Conditions allegedly "Abrogate Basic Legal Rights."  These arguments, however, relate to the enforceability of the Arbitration Agreement, an issue explicitly referred to the Arbitrator for decision.

## III.  LEGAL ARGUMENT

### A.    The Court Must Compel Arbitration Upon a *Prima Facie* Showing That An Applicable Arbitration Agreement Exists.

Section 2 of the FAA mandates that arbitration agreements "shall be valid, irrevocable, and enforceable" to the same extent as any contract.[5]  9 U.S.C. § 2.  Section 4 of the FAA

---

[5] The FAA applies to the agreement here because it is a written agreement and affects interstate

commands that a district court "shall" issue "an order directing the parties to proceed to arbitration in accordance with the terms of [their] agreement."  9 U.S.C. § 4.  Further, Section 3 of the FAA requires a district court to stay proceedings when the issue is "referable to arbitration under an agreement in writing for such arbitration."  9 U.S.C. § 3.  When such an agreement exists, "the Act leaves no room for the exercise of discretion," but requires arbitration and a stay of all court proceedings.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *accord Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1156 (3d Cir. 1989) (if an issue is arbitrable, the FAA leaves a court without authority or discretion).

Under Section 4 of the FAA, "the role of courts is 'limited to determining two issues:  (i) whether a valid agreement or obligation to arbitrate exists, and (ii) whether one party to the agreement has failed, neglected or refused to arbitrate."  *Jacobs v. USA Track & Field*, 374 F.3d 85, 88 (2d Cir. 2004) (quoting *Shaw Group Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003)).  *Accord Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 5 (1st Cir. 2014) (reversing denial of motion to compel arbitration); *Combined Energies v. CCI, Inc.*, 514 F.3d 168, 171 (1st Cir. 2008) (in ruling on a motion to compel, the court must determine whether: "(i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration.") (quoting *Bangor Hydro-Electric Co. v. New England Tel. & Tel. Co.*, 62 F. Supp.

---

commerce.  *See Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (applying the FAA to a dispute involving internet commerce); *United States v. Faris*, 583 F.3d 756, 759 (11th Cir. 2009) (per curiam) ("The internet is an instrumentality of interstate commerce.") (internal quotation marks omitted); *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) ("the Internet is an instrumentality and channel of interstate commerce . . . .").

Further, because the parties expressly agreed that their transactions were governed by the FAA, this Court should enforce that stipulation and apply the FAA.  *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 442-43 (2006) (where arbitration agreement expressly provided that FAA governed, the FAA preempted application of state law); *Joule, Inc. v. Simmons*, 2011 Mass. Super. LEXIS 292, at * 3, 29 Mass. L. Rptr. 223 (Mass. Super. Ct. 2011) ("Where the agreement states, as here, that it is governed by the [FAA], due regard must be given to that act's expression as a presumption in favor of arbitrability of claims, with any ambiguities as to scope of the contractual provision resolved in favor of arbitration.").

DB2/25898864.2

2d 152, 155 (D. Me. 1999)).

Once the movant has made a *prima facie* case that an arbitration agreement exists, the burden to negate the existence of such an agreement shifts to the opposing party. *See Hines v. Overstock.com, Inc.*, 380 Fed. Appx. 22, 24 (2d Cir. 2010) (to sustain its *prima facie* burden, the party seeking to compel arbitration must simply show that an arbitration agreement existed, not that the agreement would be enforceable). Once the burden has shifted to Plaintiffs, they must "unequivocally deny" the existence of the Arbitration Agreement. *Perez v. Main Brigade, Inc.*, No. C 07-3473, 2007 WL 2990368, at * 4 (N.D. Cal. Oct. 11, 2007). If there is no genuine issue of fact concerning the formation of the agreement, arbitration must be compelled. *Kirleis v. Dicki, McCarney & Chilcote, P.C.*, 560 F.3d 156, 159 (3d Cir. 2009).

Accordingly, the only issue this Court needs to decide to compel arbitration is whether Uber has made a *prima facie* showing that the parties entered a contract that contains an arbitration provision. Plaintiffs' own allegations establish that showing.

### B. There Is No Dispute That The Parties' Contracts Contained An Arbitration Clause.

The parties here formed valid and enforceable agreements under ordinary contract principles. "[T]he pertinent legal principles do not change simply because a contract was entered into online." *Ajemian v. Yahoo!, Inc.*, 83 Mass. App. Ct. 565, 574 (2013) ("We see no reason to apply different legal principles simply because a forum selection or limitations clause is contained in an online contract."); *see also Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004) ("While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract.").

Uber offered its services to Plaintiffs ***only*** upon the condition that they assent to Uber's Terms & Conditions. It was impossible for Plaintiffs to complete their registration without affirmatively consenting to the Terms & Conditions. *See* Holden Decl. ¶ 15 and Exs. A-D. Plaintiffs did not need to scroll or to change screens in order to be advised of the existence of Uber's Terms & Conditions. The existence of, and the need to accept and consent to, the Terms

& Conditions were conspicuous and readily visible.  Plaintiffs had the opportunity to access and read the Terms & Conditions, which Uber's App displayed in conspicuous print.  Plaintiffs accepted Uber's offer under the terms presented by clicking their assent to be bound:

> By creating an Uber account, you agree to the Terms & Conditions and Privacy Policy.

AC ¶ 23.  The screenshots Plaintiffs themselves attach to their Complaint show they were on notice that, if they created an Uber account (which Plaintiffs admit they did), Plaintiffs were bound by Uber's Terms & Conditions.  *See Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 911 (N.D. Cal. 2011) (granting motion to stay in favor of arbitration and rejecting plaintiffs' description of defendant's website, finding that description "belied by the color screenshot image provided by [defendant] which makes the reference to terms of service and hyperlink more visible").

Uber reasonably communicated the Terms & Conditions to Plaintiffs, and Plaintiffs had notice that creating an account would manifest their intent to be bound by those Terms & Conditions.  *See, e.g., Ajemian*, 83 Mass. App. Ct. at 575-76 (noting that the terms of an online agreement may be provided by hyperlink, and that such terms may be "accepted by clicking 'I accept' or by taking some similar action" to signify assent).  The Court will not relieve Plaintiffs of their own election not to read the terms of the contract they agreed to.  *See, e.g., Awuah v. Coverall N. Am., Inc.*, 703 F.3d 36, 44 (1st Cir. 2012) (A party to a written agreement "is bound by its terms whether he [or she] reads and understands them or not," and the law "does not impose a special notice requirement upon agreements containing arbitration clauses."); *Farrell v. Chandler, Gardner & Williams, Inc.*, 252 Mass. 341, 343-44 (1925) (one who signs a legal document is presumed to know its contents even if he/she did not read it).

Nor does the caselaw require that a plaintiff be presented with or forced to review the full terms and conditions before the plaintiff is bound by them.[6]  *See Starke v. Gilt Groupe, Inc.*, No.

---

[6] Plaintiffs argue that:  "Uber's registration process [did not] require, either as a condition of initially using its app or its ride share service, that either plaintiff access the 'terms & conditions'

13 Civ. 5497 (LLS), 2014 U.S. Dist. LEXIS 58006, at *8 (S.D.N.Y. Apr. 24, 2014) ("whether the consumer bothers to look is irrelevant"); *Swift*, 805 F. Supp. 2d at 908 ("no record of whether plaintiff or anyone else ever clicked on hyperlinked terms").

### C.   The Parties Delegated Questions Of Arbitrability To The Arbitrator.

As shown above, Plaintiffs affirmatively allege that they entered contracts with Uber.  It is undisputed that contract contained an Arbitration Agreement.   Plaintiffs raise general questions about the enforceability of the contract as a whole, but that is a question of arbitrability explicitly reserved for the arbitrator.  Where, as here, the parties have "explicitly incorporate[d] rules that empower an arbitrator to decide issues of arbitrability . . . ," such gateway issues are reserved for the arbitrator.[7]  *See Center Corp. v. Remote Solution Co.,* 398 F.3d 205, 208 (2d Cir. 2005).

Further, "[a] party's challenge to . . . the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate."  *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010).   Where a party challenges the validity of an arbitration agreement tangentially "via a claim that the entire contract (of which the arbitration agreement is but a part) is invalid for some reason," that issue "goes to the arbitrator."  *Rent-A-Center, West*, 561 U.S. at 80 (Stevens, J., dissenting) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S.

---

hyperlink, read the 'terms & conditions', or affirmatively assent to them."  AC ¶ 25.  However, this assertion is both irrelevant and demonstrably wrong.  Plaintiffs do not dispute that the Terms & Conditions and Privacy Policy were available ***via a hyperlink*** (and thus two clicks away), contained in the very sentence informing them that by creating an Uber account, they were agreeing to the hyperlinked Terms & Conditions.

[7]  The Arbitration Agreement here incorporates AAA Commercial Arbitration Rules, which empower the arbitrator to rule on arbitral jurisdiction, including the existence or validity of the contract containing the arbitration clause.  *See, e.g.*, *Petrofac, Inc. v. DynMcDermott Petro. Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) (AAA Rules provide that arbitrator has power to rule on his/her own jurisdiction).  "'[P]rocedural' questions which grow out of [a] dispute and bear on its final disposition" are presumptively for the arbitrator to decide.  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *see also Fantastic Sam's Franchise Corp. v. FRO Ass'n Ltd.*, 683 F.3d 18, 25 (1st Cir. 2010) (citing *Howsam*, 537 U.S. at 84) (AAA arbitrators typically decide questions which concern the scope of their own jurisdiction, including "questions concerning allegations of waiver, defenses to arbitrability").

395, 403-04 (1967)).  Where a party challenges generally the contract within which an arbitration clause is contained, there is no infirmity with the arbitration agreement itself under FAA § 2, and the parties' general contract dispute is submitted to the arbitrator for resolution.  *Prima Paint*, 388 U.S. at 403.

The Arbitration Agreement delegates gateway questions of arbitrability to the arbitrator by expressly stating that "any dispute, claim or controversy arising out of or relating to this Agreement or the … interpretation or validity thereof … will be settled by binding arbitration." Exs. A and B to Cianfrani Decl. at p. 9. Gateway questions of arbitrability are also expressly delegated to the arbitrator by incorporation of the AAA Commercial Arbitration Rules.  *Id.* Specifically, Rule 7(a) of the AAA Rules provides:  "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."[8]

**D.  The Court Should Enforce The Arbitration Agreement.**

To the extent this Court rules on issues of arbitrability, the Court must determine whether a valid agreement to arbitrate exists, whether Uber may invoke the arbitration clause, whether Plaintiffs are bound by the arbitration clause, and whether Plaintiffs' claims come within the clause's scope.  *Grand Wireless, Inc.*, 748 F.3d at 6.  Each of the elements necessary to compel arbitration is satisfied.

**1.  The Arbitration Agreement Is Valid And Enforceable.**

"When deciding whether the parties agreed under the FAA to arbitrate a certain matter, courts generally should apply ordinary state-law principles that govern the formation of

---

[8] Incorporation of the AAA Rules into consumer contracts mandates delegation of gateway questions of arbitrability to the arbitrator. *See, e.g.*, *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 10 (1st Cir. 2009) (AAA Rule R-7(a) "is about as 'clear and unmistakable' as language can get" for purposes of showing that parties agreed to have  questions of arbitrability decided by an arbitrator); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989) (where arbitration agreement incorporated rules authorizing arbitrator to determine validity of arbitration agreement, it was up to arbitrator to decide whether valid arbitration agreement existed between the parties).

contracts." *Awuah*, 703 F.3d at 42 (internal quotation marks and ellipses omitted) (reversing order denying motion to compel arbitration). "At common law, an offer is 'the manifestation of willingness to enter into a bargain made in such a way as to justify the other person in understanding that his assent will conclude the agreement.'" *Bulldog Investors Gen. Partnership v. Sec'y of the Commonwealth*, 457 Mass. 210, 220 n.12 (2010) (quoting *I&R Mech. Inc. v. Hazelton Mfg. Co.*, 62 Mass. App. Ct. 452, 455 (2004)). Acceptance occurs, and a contract is created, when the offeree assents in the manner invited or required by the offer. *See* Restatement (Second) of Contracts § 50(1); *Hobbs v. Massasoit Whip Co.*, 158 Mass. 194, 197 (1893) (Holmes, J.) ("[C]onduct which imports acceptance or assent is acceptance or assent in the view of the law, whatever may have been the actual state of mind of the party . . . .").[9]

A court must enforce an agreement to arbitrate as it would any other contract. *See, e.g.*, *Securities Indus. Assoc. v. Connolly*, 883 F.2d 1114, 1121 (1st Cir. 1989) (a state could deem all contracts of adhesion unenforceable, but, until it does, it must enforce an arbitration clause within an adhesion contract); *Lenfest v. Verizon Enter. Solutions*, No. 13-11596-NMG, 2014 U.S. Dist. LEXIS 138305, *3-5, 10-11 (D. Mass. Sept. 29, 2014) (enforcing arbitration agreement contained in defendant's online "Product Guide," which was referenced in service agreement provided to plaintiff). The basic and venerable legal principles of contract formation do not change merely because the parties made their agreement by modern electronic communication. *See, e.g.*, *Ajemian*, 83 Mass. App. Ct. at 574 ("We see no reason to apply different legal principles simply because a forum selection or limitations clause is contained in an online contract."); *Fecteau Benefits Grp., Inc. v. Knox*, 72 Mass. App. Ct. 204, 212 (2008) (enforcing agreement made by e-mail based on traditional contract principles).

---

[9] The parties' agreement generally selects the law of California, where Uber is headquartered (although it selects the FAA to govern the arbitration clause), but that choice does not become operative until it is determined that the parties made an agreement in the first place. *De Nicola v. Cunard Line, Ltd.*, 642 F.2d 5, 7 n.2 (1st Cir. 1981). In any event, the law of California as to the formation of contracts is the same as that of Massachusetts. *See, e.g.*, *Fasson v. Palace (Waterland)*, 78 F.3d 1448, 1452-53 (9th Cir. 1996) (citing Restatement (Second) of Contracts § 50).

### 2. Hybrid Clickwrap Agreements Like The One At Issue Are Routinely Enforced.

In the context of online transactions, "the terms of the agreement are binding, even if the user did not actually review the agreement, provided that the user had actual knowledge of the agreement or the website put a 'reasonably prudent user on notice of the terms of the contract.'" *Garcia v. Enter. Holdings, Inc.*, Case No. 14-00596, 2015 U.S. Dist. LEXIS 8799, at *21-22 (N.D. Cal. Jan. 23, 2015) (citing *Nguyen*, 763 F.3d at 1176). *See also Ajemian,* 83 Mass. App. Ct. at 574-575 (plaintiff is bound by terms of online contract if plaintiff is given reasonably conspicuous notice of the existence of contract terms and manifested assent to those terms).

Consistent with basic principles of contract formation, courts nationwide have enforced agreements containing clear notice to the consumer that future use is subject to terms accessible by hyperlink and where the consumer must make an affirmative "click" to communicate assent before any further use. *See, e.g., Nicosia v. Amazon.com, Inc.*, No. 14-4513, 2015 WL 500180, at *5 (E.D.N.Y. Feb. 4, 2015) (compelling arbitration where online Amazon customer placed order and website stated that, "By placing your order, you agree to Amazon.com's privacy, notice and conditions of use," which were reachable by a hyperlink on the same webpage); *Starke*, 2014 U.S. Dist. LEXIS 58006, at *2-9 (enforcing arbitration clause contained in hyperlinked Terms of Membership, where sign-up box notified user that "By joining Gilt through email or Facebook sign-up, you agree to the Terms of Membership for all Gilt Group sites" and user provided email address and clicked "Shop Now," even though user had not read terms); *Swift*, 805 F. Supp. 2d at 908, 911-12 (enforcing arbitration clause contained in hyperlinked Terms of Service, where initial screen stated below "Allow" or "Accepted" button that "By using YoVille, you also agree to the YoVille Terms of Service" and user clicked button, but no evidence that plaintiffs actually viewed terms).[10]

---

[10] *See also Crawford v. Beachbody, LLC*, No. 14-1583, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (enforcing forum selection clause where online customer placed order on website that stated that "By clicking Place Order below, you are agreeing that you have read and understand the Beachbody Purchase Terms and Conditions," which were at a hyperlink on the same webpage); *5381 Partners LLC v. Shareasale.com, Inc.*, No. 12-4263 (JFB) (AKT), 2013 U.S.

The court's analysis in *Fteja v. Facebook*, *supra*, is particularly instructive in determining whether Uber's Terms & Conditions were "reasonably communicated" to Plaintiffs, given that Plaintiffs were required to take further action not only to assent to the terms, but also to view them.   The court described Facebook's Terms of Use "as somewhat like a browsewrap agreement in that the terms are only visible via a hyperlink, but also somewhat like a clickwrap agreement in that the user must do something else—click 'Sign Up'—to assent to the hyperlinked terms.  Yet, unlike some clickwrap agreements, the user can click to assent whether or not the user has actually been presented with the terms."   841 F. Supp. 2d at 838.   In determining whether Facebook's Terms of Use had been "reasonably communicated" to plaintiff, given that consumers were required to take further action not only to assent to the terms, but also to view them, the court considered relevant Supreme Court and Second Circuit contract precedent outside of the Internet context.[11]

The *Fteja* court reasoned that "clicking the hyperlinked phrase [on Facebook's website]

---

Dist. LEXIS 136003, at *23-26 (E.D.N.Y. Sept. 23, 2013) (enforcing forum selection clause contained in Merchant Agreement hyperlink, where registration screen said that "By clicking and making a request to Activate, you agree to the terms and conditions in the Merchant Agreement" and the user clicked the referenced button); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 834-41 (S.D.N.Y. 2012) (enforcing forum selection clause contained in Terms of Service hyperlink where registration screen said that "By clicking Sign Up, you are indicating that you have read and agree with the Terms of Service" and user "must have clicked the 'Sign Up' button"); *Major v. McCallister*, 302 S.W.3d 227, 229 (Mo. Ct. App. 2009) (binding online customer to contract when: "There were spaces for Appellant to enter her contact information, followed by a 'Submit for Matching Pros' button.  Next to the button was a blue hyperlink to the website terms and this notice: 'By submitting you agree to the Terms of Use.'") (affirming dismissal for improper venue); *Hubbert v. Dell Corp.*, 835 N.E.2d 113, 122 (Ill. App. Ct. 2005) ("The statement that the sales were subject to the defendant's 'Terms and Conditions of Sale' . . . accessible online by blue hyperlinks, was sufficient notice to the plaintiffs that purchasing computers online would make the 'Terms and Conditions of Sale' binding on them.") (compelling arbitration).

[11] The court cited and relied on *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991) (the Supreme Court upheld a forum selection clause on the back of a cruise ticket even though the clause became binding at the time of purchase but the purchasers only received the actual ticket at a later time), and *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 11 (2d Cir. 1995) (the Second Circuit held that the forum selection clause contained on the back of a ticket bound plaintiffs at the moment they accepted their tickets, even though they had merely been referred to that clause, rather than shown it, in promotional materials that they received prior to their purchase).

is the twenty-first century equivalent of turning over the cruise ticket.  In both cases, the consumer is prompted to examine terms of sale that are located somewhere else." 841 F. Supp. 2d at 839.[12]  Because plaintiff was "informed of the consequences of his assenting click and he was shown, immediately below, where to click to understand those consequences," Facebook's Terms of Use were "reasonably communicated." *Id.* at 840 (citing cases).

Plaintiffs here undoubtedly had inquiry notice of Uber's Terms & Conditions.  The Uber registration process is clear, simple and unequivocal.  Directly above the sign-up button that completes the process is a textual notice stating: "By clicking 'Submit' below, you are agreeing to the Uber Terms & Conditions and Privacy Policy."  The phrases "Uber Terms & Conditions" and "Privacy Policy" are hyperlinks.[13]  That Plaintiffs chose not to view those terms and conditions, or that Plaintiffs were not "required" to view them, makes no difference under the law.  *See, e.g., Leong v. Myspace, Inc.,* No. CV 10-8366, 2011 WL 7808208, at *5 (C.D. Cal. March 11, 2011) (plaintiff on notice where "[t]he text of the Agreement was only a mouse-click away, but [plaintiff] apparently chose not to read its contents"); *see also Fteja,* 841 F. Supp. 2d at 839 (holding that hyperlinked terms provided adequate notice because courts have long upheld contracts where "the consumer is prompted to examine terms of sale that are located somewhere else.).  Because Plaintiffs had reasonable notice of Uber's Terms & Conditions and an

---

[12] The Ninth Circuit also recently noted in *Nguyen* that: "While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract.  One such principle is the requirement that mutual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract.  763 F.3d at 1175 (internal citations omitted).  The key question is whether the user had inquiry notice of the terms and conditions.  *Id.* at 1176-77.  "[W]here the website contains an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound," courts have enforced such agreements.  *Id.* at 1177.  The Ninth Circuit also noted that "the conspicuous placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design all contribute to whether a reasonably prudent user would have inquiry notice" of the terms and conditions.  *Id.* at 1177.

[13] Indeed, the entire three-step registration process requires completion of just six data fields.  It would be impossible for Plaintiffs to have overlooked the field requiring their assent to be bound.

DB2/25898864.2

opportunity to read them should they elect to do so, they became bound by the Arbitration Agreement upon their acceptance of the offered contract.

### 3. Plaintiffs Cannot Avoid Their Agreement To Arbitrate Where They Seek To Enforce The Contract Containing The Arbitration Agreement.

Plaintiffs' attempt to avoid the arbitration agreement also fails because Plaintiffs seek to affirm and enforce the contract containing the arbitration agreement at issue. Plaintiffs cannot claim that the Arbitration Agreement does not apply to them when they are suing for breach of the very contract that contains the arbitration provision. *See Infinity Fluids, Corp. v. General Dynamics Land Systems, Inc.*, No. 12-40004-TSH, 2013 U.S. Dist. LEXIS 86042, at *10 (D. Mass. Jun. 19, 2013) (rejecting the plaintiff's argument that it had no notice of the arbitration agreement when same was included in terms of the contract under which plaintiff was suing); *Grant-Fletcher v. Collecto, Inc.,* No. 13-3505, 2014 WL 1877410, at *7 (D. Md. May 9, 2014) (plaintiff's reliance on terms and conditions in her complaint "undercut[] any argument that the Arbitration Agreement was not available to her").

### 4. Plaintiffs' Claims Are Covered By The Arbitration Clause.

The face of the Amended Complaint makes plain that Plaintiffs' allegations involve a "dispute, claim or controversy arising out of or relating to this Agreement . . . or the use of the Service or Application (collectively, 'Disputes')." Exs. A and B to Cianfrani Decl. at p. 9. All of Plaintiffs' allegations in one way or another undeniably "aris[e] out of or relat[e]" to Uber's services and the parties' contracts. *See, e.g.*, AC ¶ 85 (alleging that Uber breached contract by imposing inflated charges); ¶ 88 (alleging that Uber breached warranty provision in Terms & Conditions); ¶¶ 90 and 92 (alleging that Uber improperly disclaimed warranties in Terms & Conditions). Under the FAA, a court must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). "[W]here language of an arbitration clause is broad and in the absence of any express provision

-17-

excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Grand Wireless*, 748 F.3d at 8 (internal quotation marks omitted). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Because the Terms & Conditions contain no provision that **excludes** the claims from arbitration, Plaintiffs cannot overcome the presumption of arbitrability. *See Grand Wireless*, 748 F.3d at 8-9 (holding that plaintiff failed to rebut the presumption of arbitrability because it "needed to show that the parties intended to exclude this type of dispute from the scope of the arbitration clause, not merely that the arbitration clause lacked explicit language covering" the claims) (internal citation omitted)).

### 5.     The Arbitration Agreement Is Not Unconscionable.

It is unclear if Plaintiffs contend that the Arbitration Agreement itself is unconscionable. To the extent the Court considers that issue, the Court's analysis is limited to the issue of whether the Arbitration Agreement, by itself, is unconscionable. *See Rent-A-Center*, 561 at 70-71 ("[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate."). Consequently, Plaintiffs' allegations of supposedly unconscionable terms relating to warranty disclaimers, refund policies, liability disclaimers, safety disclaimers, and surge pricing – in addition to being unfounded – are irrelevant to the issue at hand. *See* AC ¶¶ 28-35, 87-92. Indeed, the Amended Complaint does not contain **any** allegation that any aspect of the **arbitration provision** is unconscionable. That alone ends the unconscionability inquiry.

In any event, the Arbitration Agreement is not unconscionable under Massachusetts law:

> "The determination that a contract or term is or is not unconscionable is made in the light of its setting, purpose and effect." Restatement (Second) of Contracts § 208, comment a (1981). "Because there is no clear, all-purpose definition of 'unconscionable,' nor could there be, unconscionability must be determined on a case by case basis (*see Commonwealth v. Gustafsson*, 370 Mass. 181, 187 [346 N.E.2d 706 (1976)]), giving particular attention to whether, at the time of the

DB2/25898864.2

execution of the agreement, the contract provision could result in unfair surprise and was oppressive to the allegedly disadvantaged party" (emphasis added). *Zapatha v. Dairy Mart, Inc.*, 381 Mass. 284, 292-293, 408 N.E.2d 1370 (1980).

*Miller v. Cotter*, 448 Mass. 671, 863 N.E.2d 537, 545 (Mass. 2007).   *See also Storie v. Household Int'l, Inc.*, No. 03-40268-FDS, 2005 WL 3728718, *9 (D. Mass. September 22, 2005) ("[T]o prove that the terms of a contract are unconscionable, a plaintiff must show both substantive unconscionability (that the terms are oppressive to one party) and procedural unconscionability (that the circumstances surrounding the formation of the contract show that the aggrieved party had no meaningful choice and was subject to unfair surprise)") (citing *Zapatha*, 381 Mass. at 294 & n. 13, and *United Cos. Lending Corp. v. Sargeant*, 20 F. Supp. 2d 192, 206 (D. Mass.1998)).

Plaintiffs bear the burden to prove unconscionability.   *E.H. Ashley & Co. v. Wells Fargo Alarm Services*, 907 F.2d 1274, 1278 (1st Cir. 1990) ("The party seeking to invalidate a contract on the ground of unconscionability bears the burden of demonstrating that the contract in question is unconscionable.").   They do not carry that burden.   Far from being oppressive or creating an unfair surprise, the Arbitration Agreement is bilateral and replete with consumer safeguards,[14] which comprehensively protect the consumer's access to the arbitral forum on an individual basis, and go well beyond what is required to survive a challenge based on alleged unconscionability.[15]

---

[14] For example, the Arbitration Agreement provides that if a consumer's claim for damages does not exceed $75,000, Uber will pay all of AAA's "filing, administrative and arbitrator fees" for non-frivolous claims.   Exhibits A and B to Cianfrani Decl. at p. 9.   Moreover, the Arbitration Agreement recognizes the right of consumer claimants to collect attorneys' fees and expenses if they prevail in arbitration, even though Uber itself waives all rights it may have to collect attorneys' fees and expenses.   *Id*.   The Arbitration Agreement further ensures the consumer's ability to pursue a remedy by providing that arbitration proceedings "will be conducted in the county" where the consumer resides, thus eliminating the threat of prohibitive travel expenses. *Id*.

[15] *See, e.g.*, *Ellerbee v. GameStop, Inc.*, 604 F. Supp. 2d 349, 356 (D. Mass. 2009) (arbitration agreement not unconscionable, plaintiff did not lose any "substantive rights", "since the right to litigate in a judicial forum is a waivable procedural right");   *Mattox v. Decision One Mortgage Co., LLC*, No. 01-10657-GAO, 2002 WL 31121087, at *4 (D. Mass. Sept. 26, 2002) ("[t]hough the plaintiffs may have lacked the bargaining power either to refuse to sign the arbitration

To the extent Plaintiffs may contend that the class waiver is unconscionable or unenforceable, Supreme Court and Supreme Judicial Court precedent mandate a contrary conclusion. *See Concepcion*, 131 S. Ct. at 1748 (state rule barring class action waivers "interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA"); *Feeney v. Dell Inc.*, 465 Mass. 470, 472 (2013) (holding that "*Concepcion* precludes the invalidation of class waiver provisions in arbitration clauses in consumer contracts").

In light of the enforceable class action waiver, to the extent the Court considers the arbitrability of Plaintiffs' claims, the Court should dismiss Plaintiffs' class claims and order the parties to arbitrate Plaintiffs' Counts One through Six on an individual basis.

## IV.    CONCLUSION

There is no dispute that the named Plaintiffs created Uber accounts, clicked on the icon signifying their assent to Uber's Terms & Conditions, and then used the Uber App pursuant to their contracts with Uber. Plaintiffs' own allegations make clear that Plaintiffs clicked their assent to Uber's Terms & Conditions (the electronic equivalent of "signing the contract"), thereby creating an enforceable contract between them and Uber. Uber's Terms & Conditions contain an Arbitration Agreement that requires the parties to resolve disputes either by binding arbitration or in small claims court. Thus, a valid Arbitration Agreement exists, and Plaintiffs must arbitrate their claims. Uber respectfully requests that the Court compel Plaintiffs to arbitrate their claims individually and stay or, in the alternative, dismiss this action.

---

agreement or to negotiate a more amenable version, the enforcement of it in the circumstances that actually exist will not be unfair or oppressive to them."); *DeLuca v. Bear Stearns & Co.*, 175 F. Supp. 2d 102, 115 (D. Mass. 2001) (plaintiff "fail[ed] to demonstrate that the arbitration agreement's provisions were oppressive," the fact that employer "surely received the lion's share of the contract's benefits" did not automatically render agreement unenforceable).

DB2/25898864.2

Dated: May 4, 2015                    Respectfully submitted,

                                      **UBER TECHNOLOGIES, INC.,**

                                      By Its Attorneys,


                                      /s/ S. Elaine McChesney
                                      S. Elaine McChesney (BBO # 329090)
                                      elaine.mcchesney@morganlewis.com
                                      Lawrence T. Stanley, Jr. (BBO # 657381)
                                      lawrence.stanley@morganlewis.com
                                      MORGAN, LEWIS & BOCKIUS LLP
                                      One Federal Street
                                      Boston, MA  02110
                                      (617) 951-8000



## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 4, 2015.


                                      /s/ S. Elaine McChesney
                                      S. Elaine McChesney

DB2/25898864.2