UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **RACHEL CULLINANE** **JACQUELINE NUNEZ**, **ELIZABETH SCHAUL**, and **ROSS McDONAGH**, *on behalf of themselves and others similarly situated,*<br><br>Plaintiffs,<br>v.<br><br>**UBER TECHNOLOGIES, INC.**,<br><br>Defendant. | Case No. 1:14-cv-14750-DPW<br><br><br>**Plaintiffs' Sur-Reply In Opposition To Uber's Motion To Compel Arbitration, And Stay Or, In The Alternative, Dismiss Proceedings** |

Plaintiffs submit the following brief sur-reply in support of their opposition to Uber's motion to compel arbitration. The bulk of Uber's arguments were already addressed in the Plaintiffs' opposition, and are not repeated here.

**I.     The Cases Uber Cites In Its Reply Only Highlight The Flaws In Its Process**

Despite its 35 pages of briefing, Uber has yet to identify a single case where a court compelled arbitration based on an online agreement like Uber's. Instead, Uber cites a series of cases where courts upheld various forms of mainly clickwrap agreements, demonstrating why Uber's agreement is *un*enforceable. In *Pazol v. Tough Mudder, Inc.* -- F. Supp. 3d --, 2015 WL 1815685, at * 2-3 (D. Mass. Apr. 22, 2015) (Uber Reply at 4), registrants for an event had to check a box next to *each* of three scroll windows containing terms and conditions, indicating their assent, *and* the agreement conspicuously stated at the outset, in all caps, that doing so would eliminate the ability to sue in court. *Id.* * 1-2. *Small Justice LLC v. Xcentric Ventures LLC*, -- F. Supp. 3d --, 2015 WL 1431071, at * 4 (D. Mass. Mar. 27, 2015) (Reply at 4) also presented copyright terms in a scroll window, *plus* the ultimate screen "*prominently*" centered a portion of

the terms right above the "continue" button, and required the user to click a checkbox granting an irrevocable right to his post, *and* further explained that the post "will not be removed, even at my request." *EMC Corp. v. Petter*, -- F. Supp. 3d --, 2015 WL 2233086, at * 3 (D. Mass. May 13, 2015) (Reply at 4) holds a clickwrap agreement's forum selection clause enforceable.

Both *Pazol* and *Small Justice* used a registration process that signaled clearly to the user the significance of clicking a button or checking a box, *and* highlighted key terms directly adjacent to the box, *and* used a scroll bar that showed the beginning of the terms and conditions, *and* placed them on the same page as the "accept" button. As Uber acknowledges, what courts require no matter the type of online agreement – clickwrap or browsewrap - is a conspicuous notice of terms and the *clear* manifestation of acceptance. The clickwrap cases Uber cites demonstrate both, as does Uber's contract formation process for drivers (*see Mohammed v. Uber*) and for users during surge pricing (see Plaintiffs' Opposition, at 11-12, Dkt. #38).

**II.    Uber Cannot Establish Inquiry Notice Of Its Terms Or Unambiguous Manifestation of Assent To Those Terms Because of The Layout, Appearance And Language Of Its App**

To find an agreement enforceable, courts must first find that the app or web page puts the user on inquiry notice of its terms and conditions. Inquiry notice requires at a minimum that the link to the Terms and Conditions be conspicuous. *See Small Justice LLC*, 2015 WL 1431071, at * 5 (notice conspicuous where screen prominently featured key terms in center of the screen, directly above the "continue" button users must click to post; terms hyperlink appeared on at least three pages, and key terms shown on final screen prior to submission). Here, as described in Plaintiffs' Opposition at 15-18, Uber's placement of the terms link and its appearance make it inconspicuous, not prominent.

Without notice of terms there can be no valid acceptance. Even if Uber provided conspicuous notice of its terms, it cannot establish the *clear* manifestation of assent to these

terms. Unambiguous assent is generally found where there is a reference to the ultimate checkbox/ button and the terms and conditions warning that clearly alerts users that they are agreeing to terms. Both *Crawford v. Beachbody, LLC*, No. 14CV1583, 2014 WL 6606563, at *1 (S.D. Cal. Nov. 5, 2014) and *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 908, 911 (N.D. Cal. 2011)**,** used buttons to finalize the transaction that were labeled with the same words that appear in the terms notice: a button labeled "Accept" and a notice stating that by clicking "Accept" you accept the terms and conditions, or a button labeled *Place Order,* immediately below the statement "By clicking *Place Order* below, you are agreeing that you have read and understand" the terms and conditions. By using the same word or phrase, thereby linking the "accept" button to the terms and conditions, and placing the warning (clicking the button means acceptance) in immediate proximity to the button, these web merchants make it clear to users what it means to click the button. It is simple to do. It is not a question of using "magic words," as Uber mischaracterizes Plaintiffs' argument.

"Done," which Uber relies upon as its alleged manifestation of acceptance, has at least six dictionary meanings, including "brought to an end,"[1] but none of its meanings even comes close to "Accept" or "Agree," the words normally used to indicate acceptance or agreement. For example, in standard written contracts, a party's signature is typically preceded by the words "Agreed to" or "Accepted." Plaintiffs have never seen an agreement where the signature line is preceded by the word "Done," and it is hard to imagine that Uber, or any business, so uses this word.

By omitting any reference to the "Done" button in its warning, Uber has created an indication of assent that is *ambiguous* at best. *See Sgouros v. TransUnion Corp.*, No. 14 C 1850,

---

[1] Merriam-Webster.com

2015 WL 507584, at *6 (N.D. Ill. Feb. 5, 2015) (layout of web page, where paragraph authorizing access to credit information appeared between the terms window and the accept button, left ambiguous what the accept button signified; arbitration agreement was unenforceable).

### III. Uber's Agreement Is Not "Akin To" Clickwrap Because It Does Not Contain An "Accept Button"

In its effort to save its flawed agreement, Uber argues that it is "akin to" a clickwrap agreement. Reply at 9. As discussed in Plaintiffs' Opposition at 7 – 9, *Ajemian v. Yahoo!, Inc.*, 83 Mass. App. Ct. 565, 576, 987 N.E.2d 604, 613 (2013), makes clear that Uber's online agreement is not a clickwrap, or akin to one; it is a browsewrap agreement because the terms and conditions were not displayed in whole or in part, and the user did not accept the terms by clicking "I accept" or similar words.

### IV. Uber's Claim That Its Agreement Is Enforceable Under *Berkson* As A Sign-In-Wrap Also Fails

Uber's claim that *Berkson's* sign-in-wrap analysis would call for enforcement of its arbitration agreement is groundless - *Berkson* invalidated Go-Go's sign-in-wrap and its process had more safeguards than Uber's. Go-Go's "SIGN IN" button sits alone in the upper right-hand corner of the screen, just like Uber's "DONE" button. *Berkson v. Gogo LLC*, No. 14-CV-1199, 2015 WL 1600755, at *7 (E.D.N.Y. Apr. 9, 2015). But, unlike Uber, Go-Go had a *second* "SIGN IN" button directly below the statement "*By clicking 'Sign in' I agree* to the terms of use." *Id.* Uber's "DONE" button sits alone, with no sibling next to its terms of use statement, written in greyed out text. *Berkson* found fault even with Go-Go's redundant design, because clicking either SIGN IN button did not display its terms of use, the failing Uber's "DONE" button shares. *Id.*

*Berkson* notes that sign-in-wraps have been enforced in three circumstances, and all three involve agreements that require clickwrap-like unambiguous manifestations of assent to clearly stated terms. *Id.* at 31. These include: agreements where the hyperlinked terms were "next to the only button that will allow the user to continue use of the website….", such as *Zynga;* where the user signed up with a clickwrap and was then given access to terms of use hyperlinks on subsequent visits, such as *Zaltz v. JDATE,* 952 F. Supp. 2d 439, 454 (E.D.N.Y.2013) (user had to assent to clickwrap *and* click button marked "accept"); and finally, where the "terms of use" hyperlink was on multiple successive webpages coupled with a clickwrap assent requirement, such as *Major v. McCallister,* 302 S.W.3d 227, 230–31 (Mo. Ct. App. S. Dist. 2009) (user could only sign up by clicking a button next the phrase: "*By submitting you agree* to the Terms of Use").

*Berkson* rejected Go-Go's contract because clicking SIGN IN did not make the terms of use appear, and neither did it require scrolling through those terms and clicking an unambiguous phrase of obligation, like "accept" or "I agree." *Id.* at *35. Uber's design shares these failings.

Dated: June 24, 2015

Respectfully submitted,

*/s/ John Roddy*
John Roddy, BBO # 424240
Elizabeth Ryan, BBO # 549632
Bailey & Glasser LLP
99 High Street, Suite 304
Boston, MA 02110
(617) 439-6730
(617) 951-3954 (fax)

Pedro Jaile, BBO # 631410
Jaile & Trifilo LLC
188 Sumner Street
East Boston, MA 02128
(617) 561-3777
(617) 561-0300 (fax)

**CERTIFICATE OF SERVICE**

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF) and paper copies will be sent to those indicated as non-registered participants on June 24, 2015.

                                               */s/ John Roddy*
                                               John Roddy