# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**RACHEL CULLINANE, JACQUELINE NUNEZ, ELIZABETH SCHAUL**, and **ROSS McDONAGH**, *on behalf of themselves and others similarly situated*,

      Plaintiffs,

v.

**UBER TECHNOLOGIES, INC.**,

      Defendant.

Civil Action No. 1:14-cv-14750-DPW

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................ 1

II.     BACKGROUND ............................................................................................. 2

        A.      Key Terms Of The Settlement ........................................................... 4

        B.      Notice Reached Over 96% Of The Class; There Were No Objections
                And No Opt-Outs ............................................................................... 6

III.    ARGUMENT ................................................................................................. 7

        A.      The Settlement Is Fair, Reasonable, And Adequate And Should Be
                Approved ............................................................................................ 7

                1.      The Relief Obtained Is Substantial, Especially Taking Into
                        Account The  Risk, Complexity, Expense and Duration of The
                        Litigation ............................................................................... 9

                2.      No Settlement Class Member Objected To The Settlement Or
                        Opted Out ............................................................................. 12

                3.      The Factual Record Was Well Developed Through Independent
                        Investigation And Discovery And Produced A Fair and
                        Reasonable  Settlement ........................................................ 12

                4.      All Of the Relevant Rule 23(e)(2) Considerations Support
                        Approval ............................................................................... 13

                        a.      The Proposed Settlement Was Negotiated At Arm's
                                Length ....................................................................... 13

                        b.      Settlement Benefits Are Automatic ......................... 14

                        c.      The Class Representatives And Class Counsel Have
                                Adequately Represented The Class .......................... 14

        B.      The Class Is Appropriately Certified For Settlement Purposes ................. 15

IV.     CONCLUSION ............................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bezdek v. Vibram USA Inc.,*
    79 F. Supp. 3d 324 (D. Mass. 2015) .................................................................. 9, 10, 11, 13

*In re Celexa & Lexapro Mktg. & Sales Practices Litig.,*
    No. 09–civ–2067, 2014 WL 4446464 (D. Mass. Sept. 8, 2014) ........................................ 10

*In re Cendant Corp. Litig.,*
    264 F.3d 201 (3d Cir. 2001) .............................................................................................. 11

*Cullinane v. Uber Techs., Inc.,*
    893 F.3d 53 (1st Cir. 2018) ............................................................................................ 3, 11

*Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) ........................................................................................... 8, 9

*Durrett v. Housing Auth. of City of Providence,*
    896 F.2d 600 (1st Cir. 1990) ................................................................................................ 7

*Gulbankian v. MW Mfrs., Inc.,*
    C.A. No. 10-10392-RWZ, 2014 WL 7384075 (D. Mass. Dec. 29, 2014) ........................ 12

*Hays v. Eaton Grp. Attorneys, LLC,*
    No. CV 17-88-JWD-RLB, 2019 WL 427331 (M.D. La. Feb. 4, 2019) ............................ 12

*Lazar v. Pierce,*
    757 F.2d 435 (1st Cir. 1985) ................................................................................................ 7

*In re Lupron Mktg. & Sales Practices Litig.,*
    228 F.R.D. 75 (D. Mass. 2005) ........................................................................................ 7, 8

*Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund,*
    582 F.3d 30 (1st Cir. 2009) ................................................................................................. 7

*New England Carpenters Health Benefits Fund v. First DataBank, Inc.,*
    602 F. Supp. 2d 277 (D. Mass. 2009) ................................................................................. 8

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
    330 F.R.D. 11 (E.D.N.Y. 2019) ........................................................................................ 13

*In re Pharm. Indus. Average Wholesale Price Litig.*,
588 F.3d 24 (1st Cir. 2009) ................................................................................7

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ...........................................................................................6

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005) .......................................................................8, 9

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007) ..................................................................10

*Voss v. Rolland*,
592 F.3d 242 (1st Cir. 2010) ...............................................................................9

*Walsh v. Popular, Inc.*,
839 F. Supp. 2d 476 (D.P.R. 2012) .....................................................................9

**Rules**

Fed. R. Civ. P. 23 ...........................................................................................7, 8

Fed. R. Civ. P. 23(a) .........................................................................................15

Fed. R. Civ. P. 23(b)(3) .....................................................................................15

Fed. R. Civ. P. 23(c)(2) .......................................................................................6

Fed. R. Civ. P. 23(e) ...........................................................................................6

Fed. R. Civ. P. 23(e)(1) ....................................................................................2, 6

Fed. R. Civ. P. 23(e)(2) ....................................................................................7, 13

Fed. R. Civ. P. 23(e)(2)(B) ...............................................................................13, 14

Fed. R. Civ. P. 23(e)(2)(C)(i) ...............................................................................9

Fed. R. Civ. P. 23(e)(3) .......................................................................................8

Fed. R. Civ. P. 23(e)(3)(C)(iv) ..............................................................................8

**Other Authorities**

*Manual for Complex Litig.* (Fourth) (2004) ...................................................6, 12

# I.     INTRODUCTION

On April 26, 2019, Plaintiffs Rachel Cullinane, Jacqueline Nunez, Elizabeth Schaul, and Ross McDonagh and Defendant Uber Technologies, Inc. ("Uber") (collectively "the Parties") reached a settlement to resolve this class action. ECF # 100-1, 107-1. Under the Settlement, Uber will establish a $3 million Settlement Fund which will be used to pay credits to the Uber Accounts of Class Members with Active Accounts, send checks to those with Inactive Accounts, and pay attorneys' fees and expenses, costs of notice and administration, and Named Plaintiffs' Service Awards, all subject to Court approval. Class Members are not required to submit claim forms to obtain the benefits of the Agreement. Any funds which cannot be distributed to Class Members as ordered by this Court will be paid to the United States Treasury, and will not revert to Uber.

All the relevant factors that support approval are met here. The Settlement provides significant relief, particularly given the risk and expense of continued litigation. It ensures that Settlement Class Members are compensated without delay and eliminates the risk of loss at trial or on appeal. Having litigated for more than five years, through a motion to compel arbitration, and an appeal to the First Circuit, the Parties are fully apprised of the strengths and weaknesses of their respective claims and defenses. And the Settlement was negotiated at arm's length, with the assistance of an experienced class action mediator, the Hon. Stephen E. Neel (Ret.) of JAMS in Boston.

The Court approved Plaintiffs' unopposed motion for approval of class notice of settlement on September 20, 2019. ECF # 116. The Parties have fulfilled all their

obligations under that Order, and Plaintiffs now ask the Court to: (1) grant final approval of the Settlement Agreement; (2) find that the Class Notice satisfies the requirements of due process and Rule 23(e)(1); (3) find the Settlement Agreement to be fair, reasonable, and adequate; (4) dismiss on the merits and with prejudice all claims asserted against Uber; (5) retain jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of the Settlement Agreement; (6) award Plaintiffs' counsel attorneys' fees and aggregate expenses in accordance with their separately filed application for attorneys' fees, ECF # 121; and (7) award $5,000 each to Plaintiffs Cullinane, Nunez, McDonagh, and Schaul as a Service Award.

A revised proposed Final Order Approving Class Settlement is attached as Exhibit 1 and a revised Final Judgment is attached as Exhibit 2.

## II. BACKGROUND

Each of the Plaintiffs, in the course of using Uber's technology for the ride-sharing industry (the "Uber App") to travel to or from Logan Airport, alleges that Uber charged them illegal fees: an $8.75 "Logan Massport Surcharge and Toll,"[1] and an "East Boston Toll" that exceeded tolls paid by drivers with whom they networked via the Uber App. Second Amended Complaint ("Complaint"), ECF # 54, ¶¶ 41-65. Plaintiffs' claims were principally grounded in Chapter 93A and unjust enrichment, and they sought to recover the greater of the totality of fees charged or statutory damages. *Id.* at

---

[1] Or otherwise characterized as "Logan Massport Surcharge" or "Massport Surcharge."

¶¶ 85-91. They alleged that Uber systematically charged these airport-related fees to riders who were picked up or dropped off at Logan Airport, but did not remit the fees to Massport. Complaint ¶¶ 2–8, 42-43, 46, 51-54, 57-63. The Complaint sought compensatory damages, statutory damages, injunctive relief, equitable relief, and other relief to prevent Uber from continuing the challenged behavior and to recover the charges at issue. *Id.* ¶¶ A–H.

On May 4, 2015, Uber moved to compel arbitration or in the alternative, to dismiss. ECF # 31. This Court granted Uber's motion to compel, ECF # 62, but the First Circuit reversed. *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 62–64 (1st Cir. 2018). Upon remand the Parties began intensive discovery, a process that led to an agreement to stay the case while they explored a resolution through mediation.

On February 28, 2019, the Parties engaged in a day-long mediation session with retired Massachusetts Superior Court Judge Stephen Neel, at JAMS in Boston. Prior to mediation the Parties discussed settlement constructs over a period of approximately 30 days. Declaration of Elizabeth Ryan ("Ryan Decl.") ¶ 5, attached. After a day-long mediation session, Uber eventually agreed to pay $3,000,000, representing approximately 80% of the challenged fees, into a common fund from which all costs of the Settlement are to be paid: notice and administration, costs and expenses advanced by Plaintiffs' counsel, proposed service awards and requested attorneys' fees.

Based on their review and analysis of the relevant facts and legal principles, Plaintiffs and their counsel believe that the terms of the Agreement are fair, reasonable, and adequate, and beneficial to and in the best interests of the proposed Settlement

Class. Uber denies all liability but has agreed to the Settlement to avoid continued costs and the risks of litigation.

## A.    Key Terms Of The Settlement

The material terms of the Settlement include the following:

1.    *Settlement Class:* The Settlement Class is composed of all Massachusetts residents (defined as persons who both registered for an Uber Account via an iPhone in Massachusetts and had a Massachusetts billing address) who from October 18, 2011 to August 14, 2015: (a) paid an Uber invoice that included an $8.75 charge designated as "Logan Massport Surcharge and Toll" or "Logan Massport Surcharge" or "Massport Surcharge"; or (b) paid an Uber invoice that included a $5.25 charge designated as "East Boston Toll"; and (c) have not received a refund of these charges for all amounts greater than the actual toll and/or any airport fee assessed by Massport or Logan Airport. The Class List contains 101,691 identified persons.

2.    *Relief for Settlement Class Members*: Following Final Approval:

    (i)    Uber will establish a $3 million Settlement Fund which will be used to pay credits to the Uber Accounts of Settlement Class Members who have Active Accounts, to issue checks to those with Inactive Accounts, and to pay attorneys' fees and costs, administrative expenses, and Named Plaintiffs' Service Awards, subject to Court approval;

    (ii)    No claim forms will be required. Class Members with unused credits as of the credit expiration date will be issued checks in accordance with the Settlement, and uncashed checks will be paid to the United States Treasury.

3.    *Notice and Administration*: The Settlement Administrator, Kurtzman

Carson Consultants ("KCC"), emailed notice to Settlement Class Members in accordance with the schedule contained in the Order Approving Class Notice, ECF # 116, and also established a settlement website in accordance with the terms of the Agreement. See Declaration of Karen Rogan of KCC ("Rogan Decl.") ¶¶ 3-5.

4.      *Attorneys' Fees and Expenses, and Named Plaintiffs' Service Awards*: The Settlement Agreement provides that Class Counsel intends to request that this Court award attorneys' fees and expenses, as well as Service Awards of $5,000 to each of the Named Plaintiffs, which combined with the settlement administration costs shall not exceed a total amount of $999,000 or 33.3% of the Fund. Settlement Agreement, ¶¶ 13, 14. On November 22, 2019 Plaintiffs filed their motion for approval of: an award of attorneys' fees of $900,303, litigation expenses of $8,697, Service Awards of $5,000 for each named Plaintiff, and approval of notice and administrative expenses of approximately $70,000.[2] ECF # 121. No Settlement Class Member has objected to these requests.

5.      *Release*: Settlement Class Members will release all claims that were or could have been brought in the Action arising from the facts alleged in the Action. Settlement Agreement, ¶ 25.

---

[2] As per the Rogan Declaration, as of today KCC expects the settlement administration costs to be $60,500 through the end of the case, though this amount may vary if additional, unexpected work is required. Upon final approval, the exact figure will be determined and used for purposes of calculating payments under the Settlement and the figures in this paragraph may be adjusted accordingly, consistent with the Settlement Agreement, and Final Approval Order.

**B.      Notice Reached Over 96% Of The Class; There Were No Objections And No Opt-Outs**

Class members are entitled to notice of any proposed settlement and an opportunity to object or opt out before it is finally approved by the court. *Manual for Complex Litig.* (Fourth), § 21.31 (2004). Under Rule 23(e)(1), when approving a class action settlement, the district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." The Notice Plan approved by the Court was implemented by the Parties, and on October 21, 2019, KCC emailed the Class Notice to 101,071 Settlement Class Members, Rogan Decl. ¶ 3. This mailing reached 97,496 Class Members, over 96% of the total. *Id.* ¶ 4.

The Notice, attached to the Rogan Declaration as Exhibit A, is clear and straightforward, providing Settlement Class Members with enough information to evaluate whether to participate in the Settlement, as well as directions to the settlement website, which provides further detailed information. Rogan Decl., Ex. A; Settlement Agreement ¶ 17. The Notice advised Settlement Class Members how to opt out and of their rights to object and requirements for doing so—consistent with the 2018 Amendments to Rule 23(e). *See* Settlement Agreement ¶¶ 18, 19. This Notice is adequate under Rule 23(c)(2). *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811 (1985) (individual mailed notice which clearly describes the case and class members' rights meets due process requirements).

KCC established a settlement website with detailed information about the Settlement. Rogan Decl. ¶ 5. The website address,

http://www.uberlogansettlement.com/, was printed on all Notices. *Id*. The website

provides links to key documents, lists important deadlines, and explains Class

Members' rights and options. *Id*. The website also provided a toll-free number that

Class Members could call. *Id*.

The reaction of the Class has been overwhelmingly positive. There have been no

objections to the Settlement, and no Class Members have opted out. *Id*. ¶¶ 7, 8.

## III.    ARGUMENT

### A.    The Settlement Is Fair, Reasonable, And Adequate And Should Be Approved

Courts favor class action settlements. *See Lazar v. Pierce*, 757 F.2d 435, 439 (1st Cir.

1985); *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005); *Durrett*

*v. Housing Auth. of City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990) (citing "long-

recognized policy of encouraging settlements"). A settlement agreement is presumed to

be fair if it follows sufficient discovery and genuine, arm's length negotiations. *See In re*

*Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009) (where "the

parties negotiated at arm's length and conducted sufficient discovery, the district court

must presume the settlement is reasonable"); *Nat'l Ass'n of Chain Drug Stores v. New*

*England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009).

To be approved, a class action settlement must be fair, adequate, and reasonable.

Rule 23(e)(2). The 2018 Amendments to Rule 23 provide direction to courts considering

whether to approve such a settlement. Rule 23(e)(2) provides that the court should

consider whether:

(A) the class representatives and counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment;[3] and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Here, there is no agreement that Rule 23(e)(3)(C)(iv) requires to be identified.

Prior to the 2018 amendments to Rule 23, courts in this district looked to factors derived from lists established by other circuits. One such list is from the Second Circuit's decision in *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), overruled on other grounds by *Missouri v. Jenkins*, 491 U.S. 274 (1989). *See New England Carpenters Health Benefits Fund v. First DataBank, Inc.*, 602 F. Supp. 2d 277, 281 (D. Mass. 2009) (citing and applying *Grinnell* factors); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 72 (D. Mass. 2005) (same); *Lupron*, 228 F.R.D. at 93–94 (same). These factors include: "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to

---

[3] Class Counsel address the reasonableness of their requested attorneys' fees and expenses in a separate, earlier filing, ECF ## 121, 122.

withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Grinnell*, 495 F.2d at 463.[4]

Plaintiffs will address each of these factors as relevant, many of which overlap.

Ultimately, the decision whether to approve the settlement "involves balancing the advantages and disadvantages of the proposed settlement against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Walsh v. Popular, Inc.*, 839 F. Supp. 2d 476, 480 (D.P.R. 2012). The court enjoys "great discretion to 'balance [a settlement's] benefits and costs' and apply [the] general standard." *Voss v. Rolland*, 592 F.3d 242, 251 (1st Cir. 2010) (citing *New England Carpenters Ass'n*, 582 F.3d at 45). That balancing, along with all other relevant considerations, supports a finding that the Settlement is fair, reasonable, and adequate.

### 1. The Relief Obtained Is Substantial, Especially Taking Into Account The Risk, Complexity, Expense and Duration of The Litigation

Both Rule 23(e)(2)(C)(i) and the case law require the Court to consider the reasonableness and adequacy of the amount obtained under the Settlement, considering the potential outcome and the risk of not prevailing. *See Bezdek v. Vibram USA Inc.*, 79 F.

---

[4] The *Relafen* court identified a pared down list of similar factors: (1) comparison of the proposed settlement with the likely result of litigation; (2) reaction of the class to the settlement; (3) stage of the litigation and the amount of discovery completed; (4) quality of counsel; (5) conduct of the negotiations; and (6) prospects of the case, including risk, complexity, expense and duration. *Relafen*, 231 F.R.D. at 72, quoting *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003).

Supp. 3d 324, 345 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015).

The amount provided by the Settlement—$3 million—is substantial. If the Settlement is approved, the Settlement Fund will be used to pay Settlement Class Members refunds in the form of Uber Account credits or checks depending on whether their Account is Active, fees and costs of litigation, notice and administration, plus service awards. The Settlement Fund is non-reversionary, ensuring that none of the money will be returned to Uber. Settlement Class Members who do not use their credits before they expire will be sent a check for unused credits exceeding $5.00. If the Court approves counsel's requested fees and the service awards, each Settlement Class Member will receive on average approximately $19, representing approximately 54% of the Class's potential compensatory and/or statutory damages, pre-interest, or 80% before these deductions. *See* Declaration of Elizabeth Ryan, ECF # 122-1, ¶ 10.

A recovery in that range is more than reasonable. *See Bezdek*, 79 F. Supp. 3d at 345 (finding settlement that provided payment of 9% of purchase price for footwear was reasonable; worst case scenario was no recovery, best case was 100% of purchase price); *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, No. 09–civ–2067, 2014 WL 4446464, at *7 (D. Mass. Sept. 8, 2014) ("A settlement need not reimburse 100% of the estimated damages to class members in order to be fair"); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 261 (D.N.H. 2007) (settlement that provides approximately 27% of the alleged damages to the class is "outstanding" result). As the court wrote in *Bezdek*, "[s]ettlement is, of course, 'a compromise, a yielding of the highest hopes in exchange for certainty and resolution,' *Gen. Motors*, 55 F.3d at 806, and the benefit to both parties

10

is that they will avoid the outcome embodying their worst nightmares after taking the case to trial." 79 F. Supp. 3d at 346.

The results obtained here are even more remarkable considering the risk involved. While Plaintiffs are confident in their claims, litigation is always risky, expensive, and time consuming. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001) (this factor "captures 'the probable costs, in both time and money, of continued litigation"). That is particularly true here. But for Plaintiffs' willingness to appeal the ruling compelling arbitration (ECF # 62) — enforcing an arbitration clause that forbade class actions — no Class Member would have received a dime.

Plaintiffs' willingness to devote the additional time and resources to pursuing that appeal, and ultimately vindicating Class Members' position, not only has resulted in a $3 million recovery, it also produced significant consumer friendly precedent on the always contentious and often unclear law of consumer arbitration. *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53 (1st Cir. 2018).

But winning on appeal did not guarantee Plaintiffs' success in this litigation. The question of whether the Court would grant Uber's request for a summary trial under Section 4 of the Federal Arbitration Act on whether any Plaintiffs had *actual knowledge* of the arbitration provision remained unanswered. *See* ECF # 76 at 2–5. Such a trial would certainly have prolonged the litigation and an outcome adverse to Plaintiffs would have foreclosed class certification. Even if Plaintiffs succeeded, Uber would still maintain that named Plaintiffs not subject to arbitration cannot adequately represent class members who are are subject to arbitration. And Plaintiffs would still have to prevail on the issue

of whether Chapter 93A requires proof of some actual deception to establish injury, a "but for" test which could require proof that each Class Member would not have paid the fees at issue. These are highly individualized issues that also could have defeated class certification.

And even if Plaintiffs were to prevail at trial, post-trial motions and the potential for appeal could prevent Class Members from obtaining any recovery for several more years, if at all, while continuing to incur litigation related expenses.

### 2. No Settlement Class Member Objected To The Settlement Or Opted Out

The Class's positive response to the Settlement strongly supports its fairness. *See Gulbankian v. MW Mfrs., Inc.*, C.A. No. 10-10392-RWZ, 2014 WL 7384075, at *2 (D. Mass. Dec. 29, 2014) (small number of objections indicates positive response), citing *Lupron,* 228 F.R.D. at 96.

### 3. The Factual Record Was Well Developed Through Independent Investigation And Discovery And Produced A Fair and Reasonable Settlement

To assess the fairness of a proposed settlement, there must be sufficient information. *Manual for Complex Litig.* (Fourth), § 22.921 (2004); *Hays v. Eaton Grp. Attorneys, LLC*, No. CV 17-88-JWD-RLB, 2019 WL 427331, at *10–11 (M.D. La. Feb. 4, 2019) (evaluating proposed settlement under newly amended federal rules).

This case was filed in 2014. Significant litigation and discovery has taken place over the last five years, as detailed in Plaintiffs' previous filings, ECF ## 101, 107, 122. In addition to the fact discovery and the framing of operative legal issues in this Court

and at the First Circuit, the Parties exchanged salient information in preparation for, and during the mediation with Judge Neel. Both sides were well acquainted with the legal territory, the risks and uncertainties going forward, and the range of possible compromise resolutions. In light of this developed record and the familiarity of the Parties with the strengths and weaknesses of their respective cases, settlement at this point in the case is appropriate.

### 4. All Of the Relevant Rule 23(e)(2) Considerations Support Approval

#### a. The Proposed Settlement Was Negotiated At Arm's Length

Rule 23(e)(2)(B) instructs the court to consider whether the proposed settlement was negotiated at arm's length. There is typically an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's length negotiations between experienced, capable counsel after meaningful discovery. *See, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 19 (E.D.N.Y. 2019); *Bezdek*, 79 F. Supp. at 343 ("There is a presumption that a settlement is within the range of reasonableness when sufficient discovery has been provided and the parties have bargained at arms-length.").

Judge Neel is an experienced jurist and well-respected as both a judge and a mediator. His understanding of the legal nuances, practical realities of continued litigation, and parameters of a fair and reasonable settlement informed the Parties' agreement. Even at that, negotiations continued into the evening and culminated only at the point that several iterations of a proposed term sheet had been exchanged and the material provisions of the Settlement were finalized. Ryan Decl. ¶ 6.

The "arm's length negotiation" factor of Rule 23(e)(2)(B) weighs in favor of approval.

**b.    Settlement Benefits Are Automatic**

The proposed method for distributing relief to Settlement Class Members is effective and equitable. No claim forms are required. Instead, checks will be automatically mailed to Settlement Class Members with Inactive Accounts, and credits will be made to the Uber Accounts of Settlement Class Members with Active Accounts. Settlement Agreement ¶ 6. Settlement Class Members with unused credits after one year will receive a check. *Id*. All Class Members are treated alike: each will receive a *pro rata* share of the Settlement Fund after deduction for attorneys' fees and costs, Named Plaintiffs' Service Awards, and administrative expenses, subject to Court approval. *Id.*

This method of distributing relief is highly efficient and weighs in favor of granting final approval.

**c.    The Class Representatives And Class Counsel Have Adequately Represented The Class**

As discussed in Plaintiffs' initial memorandum, ECF # 101 at 6-7, and in the Memorandum in Support of Motion for Attorneys' Fees and Costs, and Service Awards, ECF # 122 at 5-8, 12-13, both Plaintiffs and Class Counsel have effectively and diligently served the Class. The four Named Plaintiffs have been exemplary representatives. They have loyally and competently represented the putative class for the more than four years of hard-fought litigation since this Action commenced. If they had not brought the case, there would be no settlement benefits at all for the Class. They have participated in

the discovery process, including by providing written discovery responses and obtaining and producing documents. They have no interests that are antagonistic to or in conflict with the Settlement Class.

In addition, Class Counsel are well-qualified and have vigorously prosecuted this class action. They have engaged in substantial discovery efforts, briefing the enforceability of an arbitration and class action waiver first in this Court, then successfully litigating the appeal in the First Circuit on this foundational issue. Class Counsel are active class action practitioners whose long experience in consumer, debtor and class action litigation is demonstrated by the Affidavit of Elizabeth Ryan filed in support of Plaintiffs' Motion for Approval. ECF # 100-2.

## B.    The Class Is Appropriately Certified For Settlement Purposes

The Court conditionally certified the Settlement Class for settlement purposes when it granted approval of class notice of the Settlement. ECF # 116. For all of the reasons contained in the brief in support of that approval, ECF # 101, which have not changed, the Settlement Class meets all requirements of Rules 23(a) and 23(b)(3), and should be finally certified for settlement purposes. The Settlement Class is sufficiently numerous because it encompasses more than 101,000 Settlement Class Members, satisfies commonality because questions about whether Uber's changes to its Terms and Conditions after this litigation commenced was effective and created an enforceable arbitration agreement, whether Settlement Class Members are entitled to refunds, and whether reliance on representations regarding the fees and tolls must be shown, are substantially identical among Settlement Class Members. The Settlement Class satisfies

typicality and adequacy because Plaintiffs' claims arise from the same facts as other Settlement Class Members and they have no conflict with the Settlement Class. In addition, predominance is satisfied because the claims of Plaintiffs and the Settlement Class Members, and the circumstances under which these claims arise, are virtually identical and predominate over any individual issues.

## IV.    CONCLUSION

For the foregoing reasons, the Settlement Agreement should be approved.


Date: January 9, 2020

Respectfully submitted,

**Plaintiffs,**
By their attorneys:

*/s/ Elizabeth Ryan*
Elizabeth Ryan, BBO # 549632
eryan@baileyglasser.com
John Roddy, BBO # 424240
jroddy@baileyglasser.com
BAILEY & GLASSER LLP
99 High Street, Suite 304
Boston, MA 02110
(617) 439-6730
(617) 951-3954 (fax)

Pedro Jaile
241 Perkins St., G-102
Boston, MA 02130
Phone (617) 312-8004

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF) on January 9, 2020.

/s/ Elizabeth Ryan
Elizabeth Ryan
